**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, | ) ) ) | |
| | ) | |
| *Plaintiffs,* | ) | Case No. 20 CV 5878 |
| | ) | |
| v. | ) | Judge |
| | ) | |
| DT LEASING, LLC, an Indiana limited liability company; and SHOSHONE TRUCKING, LLC; an Indiana limited liability company, | ) ) ) ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Charles A. Whobrey, one of its present trustees, for causes of action against Defendants allege as follows:

## INTRODUCTION

1.    The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461, provides that when an employer withdraws from a multiemployer plan, it must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381, 1391.

2.    MPPAA also provides that all trades or businesses under common control with the withdrawn employer on the date of withdrawal are jointly and severally liable for its withdrawal liability. 29 U.S.C. § 1301(b)(1); *Cent. States, Se. & Sw. Areas Pension Fund v. Messina Prods., LLC*, 706 F.3d 874, 878 (7th Cir. 2013). One way two or more organizations are under common

control is if the same five or fewer persons own 80% or more of the ownership interests in each organization. 26 C.F.R. § 1.414(c)-2(c).

3.     MPPAA further provides that any transaction with a principal purpose of evading or avoiding withdrawal liability shall be disregarded for purposes of assessing and collecting withdrawal liability. 29 U.S.C. § 1392(c).

4.     Additionally, under federal common law, any entity that is a "successor" to the withdrawn employer is liable for that employer's withdrawal liability. *See, e.g., Bd. of Trs. of Auto. Mechanics' Local No. 701 Union & Indus. Pension Fund v. Full Circle Grp., Inc.*, 826 F.3d 994 (7th Cir. 2016). An entity is a successor if the entity had notice of its predecessor's potential or actual withdrawal liability and there is substantial continuity between the predecessor's former operations and the entity's subsequent operations. *Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 845 (7th Cir. 2015).

5.     In this case, non-party Diamond Trucking, Inc.'s ("Diamond Trucking") owners, Teresa Pendleton and her brothers, Mark Bowyer, Mike Bowyer and Steve Bowyer, became concerned about Diamond Trucking's potential withdrawal liability to the Pension Fund. So, in February 2013, they created a separate company, DT Leasing, LLC ("DT Leasing"). Then, in March 2013, Diamond Trucking transferred substantially all of its assets (including substantially all of its vehicles) for no consideration to DT Leasing, which then immediately leased those vehicles back to Diamond Trucking for "an amount per hour per month to be agreed to by the parties at the end of each month." Then, on March 31, 2013, Diamond Trucking's owners changed the ownership of Diamond Trucking (leaving Teresa Pendleton as Diamond Trucking's sole shareholder) so as to remove DT Leasing from Diamond Trucking's controlled group, thus

shielding DT Leasing and Diamond Trucking's former assets from Diamond Trucking's ultimate withdrawal liability.

6.      Then, in August 2014, Diamond Trucking ceased operations and effected a complete withdrawal from the Pension Fund. As a result, Diamond Trucking and all trades or businesses under common control with Diamond Trucking on the withdrawal date incurred joint and several withdrawal liability to the Pension Fund in excess of $4.6 million.

7.      Then, on December 10, 2014 (shortly after Diamond Trucking had ceased operations), Diamond Trucking's then-sole owner, Teresa Pendleton, acquired a majority ownership interest in—and became president of—another trucking company, Shoshone Trucking, LLC ("Shoshone Trucking"). Starting in 2015 (and, specifically, by no later than the spring of 2015), Shoshone Trucking resumed Diamond Trucking's former operations. Specifically, Shoshone Trucking performed and continues to perform much of the same trucking work that Diamond Trucking had previously performed, and for many of Diamond Trucking's former customers. To continue that work, Shoshone Trucking also leased and continues to lease (from DT Leasing) many of Diamond Trucking's former vehicles and equipment. Shoshone Trucking also hired and continues to employ many of Diamond Trucking's former employees.

8.      In December 2016, only after the Pension Fund had sued Diamond Trucking to collect its withdrawal liability and while that lawsuit and the parties' withdrawal liability arbitration were pending, Diamond Trucking filed a Chapter 7 bankruptcy petition. Because Diamond Trucking had previously transferred substantially all of its assets to DT Leasing, Diamond Trucking's bankruptcy estate contained only a small amount of assets, which resulted in the Pension Fund being able to recover only a tiny fraction of its withdrawal liability claim in the bankruptcy.

9.     Accordingly, Plaintiffs bring two counts in this action. In Count I, Plaintiffs ask this Court to disregard under 29 U.S.C. § 1392(c) the March 31, 2013 transaction that removed DT Leasing from Diamond Trucking's controlled group because a (if not the only) principal purpose of that transaction was to evade or avoid the withdrawal liability. As a result, Plaintiffs ask this Court to deem DT Leasing a trade or business under common control with Diamond Trucking and thereby hold DT Leasing jointly and severally liable for the withdrawal liability. In Count II, Plaintiffs ask this Court to hold Shoshone jointly and severally liable for the withdrawal liability as a successor to Diamond Trucking because Shoshone had notice of the withdrawal liability and has substantially continued Diamond Trucking's operations.

## JURISDICTION AND VENUE

10.     This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

11.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the MPPAA, 29 U.S.C. § 1001 *et seq*. This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

12.     Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), because the Pension Fund is administered at its principal place of business in Chicago, Illinois.

## PARTIES

13.     The Pension Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

14.     Plaintiff Charles A. Whobrey is a present trustee and fiduciary of the Pension Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor

of the Pension Fund within the meaning of 29 U.S.C. § 1301(a)(10). The trustees administer the Pension Fund at 8647 West Higgins Road, Chicago, Illinois.

15.     Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Charles A. Whobrey, are authorized to bring this action on behalf of the Pension Fund, its participants, and its beneficiaries for the purpose of collecting withdrawal liability.

16.     Defendant DT Leasing is a limited liability company organized under the laws of the State of Indiana.

17.     Defendant Shoshone Trucking is a limited liability company organized under the laws of the State of Indiana.

## FACTUAL BACKGROUND

**A.      The Withdrawal, the Withdrawal Liability, and the Bankruptcy.**

18.     Non-party Diamond Trucking is a corporation organized under the laws of the State of Indiana.

19.     During relevant times, Diamond Trucking was bound by collective bargaining agreements with certain local unions affiliated with the International Brotherhood of Teamsters ("IBT") under which Diamond Trucking was required to make contributions to the Pension Fund on behalf of certain of its employees.

20.     On or about August 24, 2014, Diamond Trucking and all other trades or businesses under common control with Diamond Trucking on that date, including but not limited to all trades or businesses that would have been under common control with Diamond Trucking on that date but for transactions voidable under 29 U.S.C. § 1392(c), were a group of trades or businesses under common control (the "Diamond Trucking Controlled Group") and therefore constituted a single

employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

21.     The Diamond Trucking Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

22.     The Pension Fund determined that on or about August 24, 2014, the Diamond Trucking Controlled Group permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of 29 U.S.C. § 1383 (the "Withdrawal").

23.     As a result of the Withdrawal, the Pension Fund determined that the Diamond Trucking Controlled Group incurred joint and several withdrawal liability to the Pension Fund in the principal amount of $4,649,785.19, as determined under 29 U.S.C. § 1381(b) (the "Withdrawal Liability").

24.     During all relevant times, Teresa Pendleton has been the president and sole officer of Diamond Trucking.

25.     On or about May 26, 2015, the Diamond Trucking Controlled Group, through Diamond Trucking's president, Teresa Pendleton, received a notice and demand for payment of the Withdrawal Liability issued by the Pension Fund in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). Because the Pension Fund had obtained information indicating that Diamond Trucking had ceased operations, the Notice and Demand demanded full payment of the entire amount of the Withdrawal Liability by June 1, 2015, pursuant to 29 U.S.C. § 1399(c)(5)(B) and Appendix E, § 5(e)(2) of the Pension Fund's Plan. The amount demanded was $4,649,785.19, the balance owed at that time on the Withdrawal Liability.

26.     By a letter from its attorney, James Hanson of the law firm of Scopelitis, Garvin, Light, Hanson & Feary, P.C. ("Scopelitis"), to the Pension Fund dated August 21, 2015, Diamond Trucking requested review of the Withdrawal Liability pursuant to 29 U.S.C. 1399(b)(2)(A) (the "Review Request"). Teresa Pendleton (as Diamond Trucking's president) was copied on the Review Request.

27.     On or about February 16, 2016, Diamond Trucking, through Sara Pettinger, an attorney with Scopelitis, initiated arbitration before the American Arbitration Association ("AAA") pursuant to 29 U.S.C § 1401(a) to challenge the Withdrawal Liability. The arbitration was styled *Diamond Trucking, Inc. and Central States, Southeast & Southwest Areas Pension Fund*, AAA No. 01-16-0000-5114 (the "Arbitration").

28.     Pursuant to 29 U.S.C. §§ 1399(c)(2) and 1401(d), withdrawal liability payments must be made in accordance with the schedule set forth by the plan sponsor notwithstanding any request for review or demand for arbitration.

29.     The Diamond Trucking Controlled Group failed to remit the required withdrawal liability payment (or any portion thereof) to the Pension Fund.

30.     As a result, on March 24, 2016, the Pension Fund filed a lawsuit against Diamond Trucking in the United States District Court for the Northern District of Illinois in a case styled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Diamond Trucking, Inc.*, Case No. 16-cv-3555, to collect the Withdrawal Liability, plus interest and statutory damages (the "Lawsuit"). At all times during the Lawsuit, Diamond Trucking has been represented by attorneys with Scopelitis, including Sara Pettinger.

31.     On December 14, 2016, while both the Arbitration and the Lawsuit were pending, Diamond Trucking filed a voluntary petition for bankruptcy relief under Chapter 7 of the United

States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana in a case styled *In re Diamond Trucking, Inc.*, Case No. 16-32627 (the "Bankruptcy").

32.    As admitted in the Bankruptcy petition, which was reviewed and signed by Teresa Pendleton as Diamond Trucking's president, the Pension Fund's $4,649,785.19 claim for the Withdrawal Liability was the largest claim in the Bankruptcy and represented nearly 90% of the claims pool. (Bankruptcy Dkt. 1, pg. 12.) The second-largest claim in the Bankruptcy was held by DT Leasing in the amount of $300,000.00 for an "unsecured line of credit." (Bankruptcy Dkt. 1, pg. 13.)

33.    On December 15, 2016, as a result of the Bankruptcy, the Lawsuit was stayed pursuant to 11 U.S.C. § 362.

34.    The trustee in the Bankruptcy did not elect to pursue Diamond Trucking's challenges to the Withdrawal Liability in the Arbitration, and, by letter to the AAA dated January 31, 2017, the trustee requested that the AAA turn over all unused deposits made by Diamond Trucking to the AAA in connection with the Arbitration. Accordingly, after first conferring via email with and receiving comments from both counsel for the Pension Fund, Brandon Buyers, and counsel for Diamond Trucking, Sara Pettinger (of the Scopelitis law firm), the AAA closed the Arbitration on February 21, 2017 and notified Brandon Buyers and Sara Pettinger of the closure via email that same day.

35.    On September 12, 2017, the Pension Fund filed a motion in the Bankruptcy pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure for authority to conduct examinations of—and to obtain through subpoenas certain documents from—Diamond Trucking, DT Leasing, Shoshone Trucking and Teresa Pendleton, as well as Scopelitis, which firm had

provided legal services and representation to Diamond Trucking, DT Leasing and Shoshone Trucking. (Bankruptcy Dkt. 23.)

36.     In its Rule 2004 motion, the Pension Fund expressly stated that it was investigating whether: (1) DT Leasing was under common control with Diamond Trucking on the withdrawal date, including whether DT Leasing was removed from Diamond Trucking's controlled group pursuant to a transaction that should be voided under 29 U.S.C. § 1392(c), and is thereby liable for the Withdrawal Liability; and (2) Shoshone Trucking is a successor to Diamond Trucking and is thereby liable for the Withdrawal Liability. (Bankruptcy Dkt. 23, pgs. 7-9, ¶¶ 21-24.)

37.     On October 13, 2017, Diamond Trucking, DT Leasing, Shoshone Trucking, Teresa Pendleton and Scopelitis filed objections to the Pension Fund's Rule 2004 motion (Bankruptcy Dkts. 45 and 48), but the Rule 2004 motion was ultimately granted on February 8, 2018 (Bankruptcy Dkt. 68, the "Rule 2004 Order"). Also on October 13, 2017, Gregory Ostendorf, an attorney with Scopelitis, filed an appearance in the Bankruptcy as counsel for DT Leasing, Shoshone Trucking, Teresa Pendleton and Scopelitis (Bankruptcy Dkt. 46).

38.     On February 22, 2018, Diamond Trucking, DT Leasing, Shoshone Trucking, Teresa Pendleton and Scopelitis appealed the Rule 2004 Order to the United States District Court for the Northern District of Indiana, in a case styled *In re: Diamond Trucking, Inc.*, Case No. 3:18-cv-00140 (the "Appeal") (Bankruptcy Dkts. 74, 76 and 78), but their Appeal was dismissed on January 24, 2019.

39.     In March and April 2019, after the Appeal was dismissed, DT Leasing, Shoshone Trucking, Teresa Pendleton and Scopelitis filed motions in the Bankruptcy to quash the subpoenas served upon them by the Pension Fund pursuant to the Rule 2004 Order. (Bankruptcy Dkts. 115 and 122.) These motions have not been ruled upon in the Bankruptcy.

40.     The Bankruptcy remains pending, and the Lawsuit remains stayed.

41.     Most if not all distributions to creditors have been made in the Bankruptcy.

42.     Despite having a multimillion dollar Withdrawal Liability claim that accounted for nearly 90% of the claims pool in the Bankruptcy, the Pension Fund, to date, has received only $61,093.66 on account of the Withdrawal Liability through the Bankruptcy, all of which the Pension Fund has applied to interest that has accrued on the Withdrawal Liability.

43.     Other than the $61,093.66 received through the Bankruptcy, the Pension Fund has received no monies on account of the Withdrawal Liability.

44.     Besides Diamond Trucking (whose arbitration is now closed), no other member of the Diamond Trucking Controlled Group initiated arbitration pursuant to 29 U.S.C § 1401(a). Consequently, the amounts demanded by the Pension Fund are due and owing pursuant to 29 U.S.C. § 1401(b)(1).

45.     Each member of the Diamond Trucking Controlled Group is jointly and severally liable to the Pension Fund for the Withdrawal Liability.

**B.     DT Leasing's creation, the Asset Transfer and the Share Surrender.**

**i.      Diamond Trucking's ownership, operational background and its owners' concerns about withdrawal liability.**

46.     From 2004 at the latest through August 2014 at the earliest, Diamond Trucking's operations consisted of, among other things, trucking and hauling of asphalt, stone, sand, dirt and other aggregates for road and bridge construction jobs.

47.     From 2004 at the latest through August 2014 at the earliest, Diamond Trucking's principal place of business was located in Peru, Indiana.

48. From 2011 at the latest through March 2013, Diamond Trucking owned certain vehicles, equipment and other assets, including approximately 40-50 tri-axle dump trucks, that it used to conduct its business operations.

49. From January 1, 2001 at the latest until the Share Surrender (which is defined below and occurred on or about March 31, 2013), Teresa Pendleton and her brothers, Mark Bowyer, Mike Bowyer and Steve Bowyer, directly or indirectly owned (collectively) 100% of the total combined voting power of all classes of outstanding stock entitled to vote or 100% of the total value of outstanding shares of all classes of stock of Diamond Trucking.

50. Specifically, from January 1, 2001 at the latest until the Share Surrender (which is defined below and occurred on or about March 31, 2013), Teresa Pendleton directly or indirectly owned approximately 52%, Mark Bowyer directly or indirectly owned approximately 16%, Mike Bowyer directly or indirectly owned approximately 16% and Steve Bowyer directly or indirectly owned approximately 16% of the total combined voting power of all classes of outstanding stock entitled to vote or the total value of outstanding shares of all classes of stock of Diamond Trucking.

51. From 2001 at the latest through the present, Teresa Pendleton has been the president and sole officer of Diamond Trucking.

52. Prior to both the Withdrawal and Diamond Trucking's receipt of the Notice and Demand (and prior to March 2013, when the below-defined Asset Transfer and Share Surrender occurred), Diamond Trucking, Teresa Pendleton, Mark Bowyer, Mike Bowyer and Steve Bowyer were aware that Diamond Trucking and its controlled group would incur withdrawal liability if Diamond Trucking withdrew from the Pension Fund.

53. Specifically, on at least four prior occasions, including by letters and/or facsimiles dated July 20, 2001, March 6, 2007, February 21, 2012 and February 13, 2013 (and then

subsequently by letter dated April 2, 2014), Diamond Trucking, through its president, Teresa Pendleton, requested estimates of Diamond Trucking's prospective withdrawal liability from the Pension Fund.

54.     The Pension Fund responded to those requests by letters dated July 26, 2001, March 26, 2007, February 22, 2012, February 21, 2013 and April 3, 2014, all of which letters were addressed to and received by Teresa Pendleton as Diamond Trucking's president. In response to each request, the Pension Fund provided the requested withdrawal liability estimate and notified Diamond Trucking and Teresa Pendleton that all trades or businesses under common control with Diamond Trucking would also be jointly and severally liable for the withdrawal liability.

55.     By no later than November 2012, Diamond Trucking, its shareholder/officer Teresa Pendleton and its other shareholders, Mark Bowyer, Mike Bowyer and Steve Bowyer, had become concerned about Diamond Trucking's potential Withdrawal Liability and had devised (with the help of Scopelitis) a plan to insulate Diamond Trucking's assets from that liability.

56.     Specifically, during a meeting of Diamond Trucking's shareholders held on or about November 13, 2012, which meeting was attended by Teresa Pendleton, Mark Bowyer, Mike Bowyer and Steve Bowyer, it was stated that Diamond Trucking's attorney, Norman Garvin of Scopelitis, had advised that a separate truck leasing company be created for "liability concerns." Given (among other things) that the Pension Fund's Withdrawal Liability claim ultimately comprised almost 90% of the total claims amount in Diamond Trucking's Bankruptcy and that Diamond Trucking had previously requested and received estimates of the company's prospective withdrawal liability, it is clear that at least one "liability" (and likely the main if not the only liability) that weighed heavily on Diamond Trucking's owners' minds when they decided to create a separate truck leasing company was the potential withdrawal liability. *See, e.g.*, *Santa Fe Pac.*

*Corp. v. Cent. States, Se. & Sw. Areas Pension Fund,* 22 F.3d 725, 727 (7th Cir. 1994) (because section 1392(c) requires only that "*a principal purpose*" of a transaction be "to escape withdrawal liability," avoiding withdrawal liability needs to be only "one of the factors that weighed heavily in the [] thinking" behind the transaction (emphasis in original)).

    **ii.    Diamond Trucking's owners formally resolve to transfer substantially all of its assets to DT Leasing and to remove DT Leasing from Diamond Trucking's controlled group.**

57.    On or about January 18, 2013, Teresa Pendleton, Mark Bowyer, Mike Bowyer and Steve Bowyer held another meeting of Diamond Trucking's shareholders. At this meeting, they decided that Norman Garvin of Scopelitis would file all necessary paperwork to set up a truck leasing company that would acquire Diamond Trucking's assets, and that the leasing company would allow Diamond Trucking to continue to use those assets.

58.    On February 8, 2013, DT Leasing was formed as a limited liability company under the laws of the State of Indiana and was issued a certificate of organization by the Office of the Indiana Secretary of State. DT Leasing's articles of organization were prepared and filed by Norman Garvin of Scopelitis.

59.    DT Leasing's articles of organization provide that DT Leasing was formed "to engage in and do any lawful act concerning any or all lawful businesses for which limited liability companies may be organized."

60.    DT Leasing has been a formally organized limited liability company from February 8, 2013 through the present, including on the August 24, 2014 date of the Withdrawal.

61.    From February 8, 2013 through the present, Teresa Pendleton has been the president and sole officer of DT Leasing (just as she has been the sole officer and president of Diamond Trucking before and during that period).

62. From February 8, 2013 through the present, including on the August 24, 2014 date of the Withdrawal, Teresa Pendleton, Mark Bowyer, Mike Bowyer and Steve Bowyer have directly or indirectly owned (collectively) 100% of the ownership interests of DT Leasing, 100% of the membership interest of DT Leasing, and/or 100% of the profits interest or capital interest of DT Leasing.

63. Specifically, from February 8, 2013 through the present, including on August 24, 2014, Teresa Pendleton has owned directly or indirectly approximately 52%, Mark Bowyer has owned directly or indirectly approximately 16%, Mike Bowyer has owned directly or indirectly approximately 16% and Steve Bowyer has owned directly or indirectly approximately 16% of the ownership interests of DT Leasing, the membership interest of DT Leasing, and/or the profits interest or capital interest of DT Leasing.

64. On March 13, 2013, Diamond Trucking's shareholder/officer, Teresa Pendleton, and shareholders, Mark Bowyer, Mike Bowyer and Steve Bowyer, formally resolved to follow through on the November 2012 plan to transfer Diamond Trucking's trucks to DT Leasing.

65. Specifically, on March 13, 2013, Diamond Trucking's shareholder/officer, Teresa Pendleton, and shareholders, Mark Bowyer, Mike Bowyer and Steve Bowyer, unanimously adopted, consented to and approved the following recitals and resolutions on behalf of Diamond Trucking:

. . .

WHEREAS, DT Leasing, LLC, an Indiana limited liability company ("DT Leasing") is a newly formed company having as its members the same individuals in the same relative holdings positions as the Shareholders of [Diamond Trucking];

WHEREAS, [Diamond Trucking's] Board and the Shareholders [of Diamond Trucking] believe that it is in the best interests of [Diamond Trucking] and the Shareholders [of Diamond Trucking] to transfer from [Diamond Trucking] to DT Leasing all trucks owned and held by [Diamond Trucking] as of the date hereof,

with the exception of one (1) truck, to be effective on March 14, 2013 (the "Proposed Transfer");

WHEREAS, [Diamond Trucking's] Board desires that [Diamond Trucking] then lease the aforementioned trucks back to [Diamond Trucking] for a term of not less than (12) twelve months, pursuant to the terms of an Equipment Lease Agreement by and between [Diamond Trucking] and DT Leasing, as presented to [Diamond Trucking's] Board (the "Equipment Lease");

WHEREAS, Mike Bowyer, Mark Bowyer and Steve Bowyer, each being a Shareholder [of Diamond Trucking], desire to surrender for no consideration their respective shares of [Diamond Trucking], effective March 31, 2013 (the "Effective Date") such that as of the Effective Date, neither Mike Bowyer, Mark Bowyer nor Steve Bowyer will be a Shareholder [of Diamond Trucking], and Teresa J. Pendleton will be the sole Shareholder of [Diamond Trucking] (the "Share Surrender"); and

WHEREAS, [Diamond Trucking's] Board is of the opinion that the Share Surrender is in the best interests of [Diamond Trucking] and the Shareholders [of Diamond Trucking].

. . .

RESOLVED, FURTHER, that the Proposed Transfer and the Equipment Lease be, and hereby are, approved;

RESOLVED, FURTHER, that Teresa J. Pendleton, as the Authorized Officer (the "Authorized Officer"), be, and hereby is, authorized to execute and deliver in the name of [Diamond Trucking] all instruments and documents necessary to facilitate and consummate the Proposed Transaction; the Equipment Lease, and the Share Surrender;

. . .

66. In other words, on March 13, 2013, Diamond Trucking's owners resolved not only that Diamond Trucking would, for no consideration, transfer substantially all of its assets to DT Leasing, which would then lease those assets back to Diamond Trucking; they also resolved to change the ownership of Diamond Trucking so that DT Leasing would no longer be under common control with Diamond Trucking.

67. The effect would be to allow Diamond Trucking to continue to use its assets through the lease-back arrangement, while insulating substantially all of its assets from withdrawal

liability. Specifically, Diamond Trucking's assets would be owned by a company, DT Leasing, that was no longer under common control with Diamond Trucking and thus was no longer jointly and severally liable for Diamond Trucking's potential withdrawal liability under 29 U.S.C. § 1301(b)(1).

### iii.    The Asset Transfer.

68.    In March 2013, Diamond Trucking transferred substantially all of its assets, including approximately 47 vehicles (tri-axle dump trucks) and other pieces of equipment (collectively, the "Transferred Assets"), to DT Leasing (the "Asset Transfer").

69.    As a result, Diamond Trucking's December 14, 2016 Bankruptcy petition listed very few remaining assets, including "old computers" and "old office furniture." (Bankruptcy Dkt. 1, pgs. 6-8.)

70.    DT Leasing did not provide any value or consideration to Diamond Trucking in exchange for the Transferred Assets or as part of the Asset Transfer.

### iv.    The Share Surrender.

71.    From February 8, 2013 through on or about March 31, 2013, Diamond Trucking and DT Leasing were a group of trades or businesses under common control within the meaning of 29 U.S.C. § 1301(b)(1). That is, the same five or fewer individuals owned 80% or more of the collective ownership interests of both companies.

72.    Specifically, from February 8, 2013 through on or about March 31, 2013, Teresa Pendleton, owned directly or indirectly approximately 52%, Mark Bowyer owned directly or indirectly approximately 16%, Mike Bowyer owned directly or indirectly approximately 16% and Steve Bowyer owned directly or indirectly approximately 16% of the ownership interests of both Diamond Trucking and DT Leasing.

73.     On or about March 31, 2013 (and after the Asset Transfer), Mark Bowyer, Mike Bowyer and Steve Bowyer surrendered all shares of stock that each held in Diamond Trucking (the "Share Surrender").

74.     Neither Mike Bowyer, Mark Bowyer nor Steve Bowyer received any value or consideration in exchange for the Share Surrender.

75.     As a result of the Share Surrender, Teresa Pendleton has been Diamond Trucking's sole shareholder since March 31, 2013.

76.     Also, as a result of the Share Surrender, DT Leasing was removed from Diamond Trucking's controlled group because the same five or fewer individuals no longer collectively owned 80% or more of each entity. That is, while Teresa Pendleton, Mark Bowyer, Mike Bowyer and Steve Bowyer owned 80% or more (100%, specifically) of Diamond Trucking and DT Leasing's ownership interests prior to the Share Surrender, the only common owner after the Share Surrender was Teresa Pendleton, who owned less than 80% of DT Leasing's membership interests.

77.     Yet, despite relinquishing their formal ownership of Diamond Trucking, Mark Bowyer, Mike Bowyer and Steve Bowyer continued to be involved in the operations and business of Diamond Trucking after the March 31, 2013 Share Surrender, even though none of the three were officers of Diamond Trucking and Teresa Pendleton remained Diamond Trucking's sole officer.

78.     Specifically, during the period of May 2014 through August 2014, Mike Bowyer, along with Teresa Pendleton, participated in five (5) bargaining sessions in an attempt to negotiate a new collective bargaining agreement covering Diamond Trucking's IBT-affiliated union employees (in which Diamond was proposing to no longer contribute to the Pension Fund). And, even after negotiations broke down in August 2014 and Diamond Trucking's union employees

went on strike, Mike Bowyer was frequently copied on correspondence from Diamond Trucking's attorneys to the union regarding the labor dispute.

79. Additionally, Mark Bowyer, Mike Bowyer and Steve Bowyer each loaned and/or provided monies to Diamond Trucking in 2014, after the 2013 Share Surrender.

**v. DT Leasing's lease-back to Diamond Trucking.**

80. Further, after the Asset Transfer, Diamond Trucking continued to use the Transferred Assets that it had transferred to DT Leasing.

81. Specifically, on or about April 1, 2013, DT Leasing and Diamond Trucking entered into a certain lease agreement whereby DT Leasing leased all or substantially all of the Transferred Assets back to Diamond Trucking, which Transferred Assets Diamond Trucking continued to use to conduct its operations. The lease agreement was signed by only one person, Teresa Pendleton, who signed it as president of both Diamond Trucking and DT Leasing.

82. Notably, the lease agreement did not contain a set rental rate or amount. Instead, the lease agreement provided that the rent would be for "an amount per hour per month to be agreed to by the parties at the end of each month."

83. DT Leasing leased all or substantially all of the Transferred Assets back to Diamond Trucking from on or about April 1, 2013 through August 2014, when Diamond Trucking permanently ceased operations.

84. Diamond Trucking continued to use all or substantially all of the Transferred Assets (which had been transferred to DT Leasing) from on or about April 1, 2013 through August 2014, when Diamond Trucking permanently ceased operations.

**C. The continuation of Diamond Trucking's operations through Shoshone Trucking.**

85. In August 2014, Diamond Trucking permanently ceased all operations.

86.    On December 10, 2014, Teresa Pendleton (Diamond Trucking's president and then-sole shareholder) acquired a 51% membership interest in Shoshone Trucking.

87.    From December 10, 2014 through the present, Teresa Pendleton and Rochelle Bowyer (Teresa Pendleton's sister-in-law and Mike Bowyer's spouse) have owned 100% of Shoshone Trucking's membership interests.

88.    From December 10, 2014 through the present, Teresa Pendleton has been the majority shareholder of Shoshone Trucking, Diamond Trucking and DT Leasing.

89.    From December 10, 2014 through June 28, 2019, Teresa Pendleton was the president of Shoshone Trucking. She was also the president of Diamond Trucking and DT Leasing during that same period.

90.    As president of both Diamond Trucking and Shoshone Trucking from December 10, 2014 through June 28, 2019, Teresa Pendleton's actual notice of Diamond Trucking's withdrawal liability to the Pension Fund is imputed to Shoshone Trucking.

91.    Prior to December 10, 2014, Teresa Pendleton had actual notice of Diamond Trucking's potential withdrawal liability to the Pension Fund, including through the Pension Fund's July 26, 2001, March 26, 2007, February 22, 2012, February 21, 2013 and April 3, 2014 responses to Diamond Trucking's requests for withdrawal liability estimates, which responses were received by Teresa Pendleton. This notice was imputed to Shoshone Trucking no later than December 10, 2014, when Teresa Pendleton became Shoshone Trucking's president.

92.    Further, by no later than December 10, 2014 (when Teresa Pendleton became president of Shoshone Trucking), Shoshone Trucking, through Teresa Pendleton (who was also the sole officer of Diamond Trucking), had actual notice that Diamond Trucking had ceased operations. Further, by no later than December 10, 2014, Shoshone Trucking, through Teresa

Pendleton and information she had previously received, had actual notice that a cessation of operations by Diamond Trucking would result in a withdrawal and withdrawal liability.

93.     Accordingly, by no later than December 10, 2014, Shoshone Trucking, through Teresa Pendleton, had actual notice that Diamond Trucking would be liable for withdrawal liability.

94.     Additionally, by no later than December 10, 2014, Shoshone Trucking, through Teresa Pendleton, had actual notice of the approximate amount in withdrawal liability that Diamond Trucking would incur. Specifically, the Pension Fund's April 3, 2014 response to Diamond Trucking's April 2, 2014 estimate request notified Diamond Trucking and Teresa Pendleton that if Diamond Trucking withdrew from the Pension Fund in 2013, then Diamond Trucking's resultant withdrawal liability would be $4,767,007.97 (which was only approximately $100,000.00 more than the withdrawal liability amount ($4,649,785.19) that Diamond Trucking ultimately became liable for as a result of its 2014 Withdrawal).

95.     Further, starting in 2015 and continuing through present, Shoshone Trucking has substantially continued Diamond Trucking's operations. For example, Shoshone Trucking has used many of Diamond Trucking's former employees to perform the same (or substantially the same) job duties they had performed for Diamond Trucking.

96.     From 2015 (and, specifically, no later than the spring of 2015) through the present, Shoshone Trucking has employed many of the same employees that were formerly employed by Diamond Trucking, including Teresa J. Pendleton, Rochelle Bowyer, Ted Peters, and approximately 15-20 of Diamond Trucking's approximately 35 former drivers.

97.     Further, during all relevant times, Rochelle Bowyer has been Mike Bowyer's spouse and Teresa J. Pendleton's sister-in-law.

98.     For years until Diamond Trucking ceased operations in 2014, Rochelle Bowyer was an employee of Diamond Trucking, whose duties included, among other things, accounting and/or bookkeeping.

99.     From 2015 (and, specifically, no later than the spring of 2015) through the present, Rochelle Bowyer has likewise performed accounting and/or bookkeeping services and/or duties for Shoshone Trucking.

100.    Similarly, for years until Diamond Trucking ceased operations in 2014, Ted Peters was an employee of Diamond Trucking, whose duties included, among other things, managing and dispatching Diamond Trucking's drivers.

101.    From 2015 (and, specifically, no later than the spring of 2015) through the present, Ted Peters has been an employee of Shoshone Trucking working as a dispatcher and driver.

102.    Further, by 2015 (and, specifically, no later than the spring of 2015), Diamond Trucking's former activities had been resumed by Shoshone Trucking.

103.    Specifically, for years until Diamond Trucking ceased operations in 2014, Diamond Trucking conducted trucking and hauling activities, including trucking and hauling of asphalt, stone, sand, dirt and other aggregates for road and bridge construction jobs.

104.    From 2015 (and, specifically, no later than the spring of 2015) through the present, Shoshone Trucking has conducted the same trucking and hauling activities that were formerly performed by Diamond Trucking, including trucking and hauling of asphalt, stone, sand, dirt and other aggregates for road and bridge construction jobs.

105.    For years until Diamond Trucking ceased operations in 2014, Diamond Trucking operated exclusively in Indiana.

106.     From 2015 (and, specifically, no later than the spring of 2015) through the present, Shoshone Trucking has operated in the same geographic areas in Indiana in which Diamond Trucking formerly operated.

107.     From 2015 (and, specifically, no later than the spring of 2015) through the present, Shoshone Trucking has performed the same or substantially the same work that Diamond Trucking performed for at least eight of Diamond Trucking's former clients and/or customers.

108.     For years until Diamond Trucking ceased operations in 2014, Diamond Trucking used vehicles and pieces of equipment in its operations, including the tri-axle dump trucks and other Transferred Assets that Diamond Trucking transferred to DT Leasing as part of the Asset Transfer.

109.     Since 2015 (and, specifically, no later than the spring of 2015), Shoshone Trucking has used many of the same vehicles and pieces of equipment that Diamond Trucking formerly used in its operations, including many of the same tri-axle dump trucks and certain other Transferred Assets that Diamond Trucking transferred to DT Leasing as part of the Asset Transfer (which Transferred Assets were leased back to Diamond Trucking before Diamond Trucking shut down). Specifically, since 2015 (and, specifically, no later than the spring of 2015), those vehicles and pieces of equipment have been leased from DT Leasing to Shoshone Trucking.

110.     From January 2015 through December 2017, Shoshone Trucking parked vehicles and equipment at Diamond Trucking's former principal office address: 2653 South 400 West, Peru, Indiana 46970.

111.     The law firm of Scopelitis formerly provided legal services and representation to Diamond Trucking in various matters, including with respect to collective bargaining and the Withdrawal Liability. Additionally, Norman Garvin, an attorney for Scopelitis, counseled

Diamond Trucking and its shareholders with respect to the creation of DT Leasing, the Asset Transfer and the Share Surrender.

112.     Similarly, Scopelitis has provided legal services and representation to Shoshone Trucking in various matters. Specifically, Norman Garvin, an attorney for Scopelitis, prepared Shoshone Trucking's articles of organization and was its original registered agent. Attorneys for Scopelitis also represented Shoshone Trucking in a National Labor Relations Board charge brought against Shoshone Trucking by an IBT-affiliated local union that represents certain of Shoshone Trucking's employees.

**COUNT I**
**FOR WITHDRAWAL LIABILITY AGAINST DT LEASING**
**AS A MEMBER OF THE DIAMOND TRUCKING CONTROLLED GROUP**

113.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 112 of this Complaint as though fully set forth herein.

114.     This Count I is brought against DT Leasing.

115.     29 U.S.C. § 1392(c) provides that a transaction is to be disregarded if a principal purpose of such transaction is to evade or avoid the payment of withdrawal liability.

116.     For the period of February 8, 2013 until the Share Surrender (which occurred on or about March 31, 2013), DT Leasing was a trade or business under common control with Diamond Trucking within the meaning of 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

117.     The Share Surrender had the effect of breaking the common control between DT Leasing and Diamond Trucking and thus eliminating DT Leasing's liability for the Withdrawal Liability.

118.    At the time of the Share Surrender, Diamond Trucking had actual notice of Diamond Trucking's potential withdrawal liability to the Pension Fund, including, without limitation, by virtue of Diamond Trucking's July 20, 2001, March 6, 2007, February 21, 2012, and February 13, 2013 requests for estimates of Diamond Trucking's withdrawal liability and the Pension Fund's responses thereto, which responses provided the requested estimates and also notified Diamond Trucking that all trades or businesses under common control with Diamond Trucking would also be jointly and severally liable for the withdrawal liability.

119.    Further, based on the facts set forth above, including the facts set forth in paragraphs 49-67, 71-79 and 116-118, a principal purpose of the Share Surrender was to remove DT Leasing from the Diamond Trucking Controlled Group and thus evade or avoid DT Leasing's liability to the Pension Fund for the Withdrawal Liability.

120.    Pursuant to 29 U.S.C. § 1392(c), the Share Surrender is to be disregarded in determining and collecting the Withdrawal Liability. Therefore, DT Leasing is deemed to be a trade or business under common control with Diamond Trucking on the date of withdrawal (August 24, 2014) within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder and thus is jointly and severally liable for the Withdrawal Liability as a member of the Diamond Trucking Controlled Group.

121.    Further, DT Leasing did not timely initiate arbitration relating to the Withdrawal Liability under 29 U.S.C § 1401(a) and has therefore waived the right to contest that liability.

122.    Specifically, DT Leasing had actual notice of the Withdrawal Liability by no later than May 26, 2015, by virtue of Diamond Trucking and Teresa Pendleton's receipt of the Notice and Demand on that date, at which time Teresa Pendleton was president of both Diamond Trucking and DT Leasing.

123.    DT Leasing also had actual notice of the Withdrawal Liability by no later than August 21, 2015, by virtue of Teresa Pendleton's receipt of a copy of the Review Request on that date, at which time Teresa Pendleton was president of both Diamond Trucking and DT Leasing.

124.    Further, DT Leasing also had actual notice of the Withdrawal Liability by virtue of the Pension Fund's September 12, 2017 Rule 2004 motion filed in the Bankruptcy (Bankruptcy Dkt. 23), in which the Pension Fund expressly stated that it was investigating whether DT Leasing was liable for the Withdrawal Liability, and to which motion DT Leasing, through Gregory Ostendorf, an attorney with Scopelitis, filed an objection in the Bankruptcy on October 13, 2017 (Bankruptcy Dkt. 48).

125.    Further, as stated above, DT Leasing's attorneys (Scopelitis) knew, through Sara Pettinger of Scopelitis, that the AAA had closed the Arbitration initiated by Diamond Trucking on February 21, 2017.

126.    DT Leasing did not timely initiate arbitration pursuant to 29 U.S.C § 1401(a) with respect to the Withdrawal Liability. Consequently, the amounts demanded by the Pension Fund are due and owing from DT Leasing pursuant to 29 U.S.C. § 1401(b)(1).

**WHEREFORE**, Plaintiffs request the following relief:

(a)    A judgment against Defendant DT Leasing, LLC and in favor of Plaintiffs, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

(i)    $4,649,785.19 in withdrawal liability;

(ii)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

        (iii)    an amount equal to the greater of interest on the past due withdrawal liability payments or liquidated damages of 20% of the past due withdrawal liability payments; and

        (iv)    attorneys' fees and costs.

(b)    Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c)    Such further or different relief as this Court may deem proper and just.

**COUNT II**
**FOR WITHDRAWAL LIABILITY AGAINST**
**SHOSHONE TRUCKING AS A SUCCESSOR TO DIAMOND TRUCKING**

127.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 126 of this Complaint as though fully set forth herein.

128.    This Count II is brought against Shoshone Trucking.

129.    Based on the facts set forth above, including the facts set forth in paragraphs 51-56 and 85-94, by no later than December 10, 2014, Shoshone Trucking (through Teresa Pendleton, president and owner of both companies) had notice of Diamond Trucking's potential Withdrawal Liability to the Pension Fund.

130.    Based on the facts set forth above, including the facts set forth in paragraphs 51-56 and 85-94, by no later than December 10, 2014, Shoshone Trucking (through Teresa Pendleton, president and owner of both companies) had notice that Diamond Trucking would in fact be liable to the Pension Fund for withdrawal liability and had notice of the approximate amount of that liability.

131.    Based on the facts set forth above, including the facts set forth in paragraphs 85-89 and 95-112, from 2015 (and, specifically, no later than the spring of 2015) through present, Shoshone Trucking has substantially continued Diamond Trucking's operations.

132.    Thus, based on the facts set forth above, including the facts set forth in paragraphs 24-26, 49-67, 71-79, 85-112, 116-118 and 129-131, Shoshone Trucking is a successor to Diamond Trucking.

133.    As the successor to Diamond Trucking, Shoshone Trucking is jointly and severally liable for the Withdrawal Liability owed by Diamond Trucking to the Pension Fund.

**WHEREFORE**, Plaintiffs request the following relief:

(a)    A judgment against Defendant Shoshone Trucking, LLC and in favor of Plaintiffs, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

(i)    $4,649,785.19 in withdrawal liability;

(ii)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii)    an amount equal to the greater of interest on the past due withdrawal liability payments or liquidated damages of 20% of the past due withdrawal liability payments; and

(iv)    attorneys' fees and costs.

(b)    Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by

JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

      (c)      Such further or different relief as this Court may deem proper and just

Respectfully submitted,

*/s/ Brandon A. Buyers*
Brandon A. Buyers (ARDC #06312454)
CENTRAL STATES FUNDS
Law Department
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
847-939-2464
bbuyers@centralstatesfunds.org

October 2, 2020                            *ATTORNEY FOR PLAINTIFFS*