UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CHARLES A. WHOBREY, as Trustee,<br><br>Plaintiffs,<br><br>v.<br><br>DT LEASING, LLC; SHOSHONE TRUCKING, LLC,<br><br>Defendants. | No. 19 C 05878<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and its trustee Charles A. Whobrey, brought this ERISA action to recover withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan. They allege that Defendants, DT Leasing, LLC and Shoshone Trucking, LLC are jointly and severally liable for the withdrawal liability of prior plan participant Diamond Trucking.

Defendants have moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer venue to the Northern District of Indiana under 28 U.S.C. § 1404(a). R. 16. For the reasons stated below, Defendants' motion is denied on both counts.

## Background

Pursuant to several agreements, non-party Diamond Trucking was previously required to make contributions to the Pension Plan on behalf of certain of its

1

employees. Plaintiffs allege that on or about August 24, 2014, Diamond Trucking completely withdrew from the Plaintiff Pension Fund and incurred resulting withdrawal liability pursuant to 29 U.S.C. § 1381. According to Plaintiffs, Defendant DT Leasing was, at the time of the withdrawal, a business under common control with Diamond Trucking and is therefore jointly and severally liable for the withdrawal liability amount under 29 U.S.C. § 1301(b)(1).[1] Plaintiffs further allege that Defendant Shoshone Trucking is a "successor" to Diamond Trucking and is therefore likewise jointly and severally liable for its withdrawal liability amount.

Defendants submitted affidavits along with their motion describing the business practices of DT Leasing and Shoshone Trucking. *See* R. 17-1, Decl. of Rochelle Bowyer; R. 17-2, Decl. of Michael Bowyer. According to these affidavits, which Plaintiffs do not appear to dispute, neither DT Leasing nor Shoshone Trucking do any business in the State of Illinois. Both are incorporated and maintain their principal places of business in Indiana and conduct all their operations in Indiana.

## Analysis

I. <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

Normally, personal jurisdiction is governed by the law of the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). For instance, a federal court sitting in Illinois may exert jurisdiction commensurate with an Illinois state court of general jurisdiction. *Id.* However, for

---

[1] Plaintiffs allege that certain transactions concerning the relationship between DT Leasing and Diamond Trucking are voidable under 29 U.S.C. § 1392(c).

federal laws such as ERISA that authorize nationwide service of process on a claim, the relevant forum is not the particular state, but the United States as a whole. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000). As the Seventh Circuit explained in *Elite Erectors*, the applicable test in cases arising under these laws is whether the defendants have minimum contacts with the United States. *Id.* (citing several prior cases endorsing the "national contacts" test for federal statutes permitting nationwide service of process); *accord Canaday v. Anthem Cos.*, 9 F.4th 392, 398 (6th Cir. 2021) (where Congress has provided for nationwide service of process, "any limitation on [the court's] authority would arise from the Fifth Amendment's Due Process Clause and its requirements of minimum contacts with the United States, not the Fourteenth Amendment's Due Process Clause and its requirement of minimum contacts with the host State"); *Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825 (5th Cir. 1996) (concluding that ERISA's nationwide service of process provision permits a federal court to exercise jurisdiction over defendant with minimum contacts with the United States).

Defendants do not dispute, at least at this juncture, that Plaintiffs' claims arise under ERISA and may invoke its nationwide service of process provisions. *See* 29 U.S.C. §§ 1132(e)(2), 1451(d).[2] And because Defendants obviously have significant

---

[2] Section 1132 governs service of process for single-employer plans, while Section 1451 is the counterpart service of process provision for multi-employer plans. They are otherwise functionally equivalent.

3

contacts with the United States by virtue of their business operations in Indiana, *Elite Erectors* would seem to provide an easy answer in this case. But Defendants assert that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773 (2017), upended this "personal jurisdictional landscape." R. 17, at 4. As a result, Defendants insist that pre-*Bristol-Myers* decisions using a nationwide contacts test must be "reexamined" (i.e., ignored) in favor of a statewide analysis.

Plaintiffs do not contest Defendants' lack of contacts with Illinois, which would clearly make jurisdiction improper under a state-specific test. The question, then, is whether *Bristol-Myers* prohibits a federal court from exercising personal jurisdiction in the scenario presented here. The Court finds that it does not.

In *Bristol-Myers*, a group of plaintiffs including California and non-California residents brought state-law claims in California state court alleging they were injured by Bristol-Myers Squibb's ("BMS") drug Plavix. 137 S. Ct. at 1778. It was undisputed that the nonresidents' claims had no connection to California—those plaintiffs had not received Plavix from California sources, had not been injured by the drug in California, and had received no related treatment in California. *Id.* at 1782. Applying "settled principles regarding specific jurisdiction," the Court noted that specific jurisdiction required an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Because BMS's conduct allegedly giving rise to the

nonresidents' claims had no relationship to California, the California court could not exercise personal jurisdiction over BMS on those claims, despite any similarity to the California residents' claims. *Id.*

*Bristol-Myers* was, by its own terms, concerned only with "the due process limits on the exercise of specific jurisdiction by a State." *Id.* at 1783-84. It offered no opinion as to "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. This fact alone is arguably enough to disregard *Bristol-Myers'* impact here. *See Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 860 (N.D. Ill. 2021) (holding that *Bristol-Myers* did not apply in federal court because it "addressed the Due Process standard that applies to *state* courts"); *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-CV-03200-N, 2018 WL 2971135, at *2 (N.D. Tex. Mar. 16, 2018) (same). The Supreme Court itself noted, just weeks before its decision in *Bristol-Myers*, that "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1555 (2017); *see also Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (in cases arising under federal question jurisdiction, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant").

In response to this apparent limitation, Defendants point out that the Due Process Clauses in the Fifth and Fourteenth Amendments are "virtually identical."

5

R. 27, at 2 n.1. But while the language itself may be indistinguishable, there is at least one significant difference in the analysis under each: The relevant forum for Fifth Amendment purposes is the United States, while the relevant forum for Fourteenth Amendment purposes is an individual state. This Court has already recognized this important distinction in rejecting similar arguments in the wake of *Bristol-Myers*. *See, e.g.*, *Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2020 WL 6273477, at *6 (N.D. Ill. Oct. 26, 2020) ("Jurisdiction in this Court is not predicated on the limited interactions of Defendants with this forum, it is based on the nationwide personal jurisdiction that arises under Section 12."); *accord Fink ex rel. Nation Safe Drivers Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 473 F. Supp. 3d 366, 372-73 (D. Del. 2020) (holding that nationwide contacts test was appropriate for ERISA claim). Other courts applying *Bristol-Myers* have drawn similar distinctions between federal statutes with provisions for nationwide service of process and those without. *See, e.g.*, *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 280 (S.D.N.Y. 2019) (finding that *Bristol Myers* barred exercise of specific jurisdiction over nonresident claims in Fair Labor Standards Act case but noting that Congress could authorize nationwide service of process for FLSA as it has with ERISA); *Rafferty v. Denny's, Inc.*, No. 5:18-cv-2409, 2019 WL 2924998, at *5-7 (N.D. Ohio July 8, 2019) (same). Because the relevant forum in this case is the United States, *Bristol-Myers* does not foreclose the exercise of jurisdiction here.

Defendants' suggestion that *Bristol-Myers* has undermined the Seventh Circuit's decision in *Elite Erectors* is similarly unavailing. In fact, *Elite Erectors*

6

considered and rejected substantially similar arguments before *Bristol-Myers* even arose. *See Elite Erectors*, 212 F.3d at 1035-36 (discussing the origins and purpose of the minimum contacts analysis in state versus federal court). Since *Bristol-Myers* relied on a "straightforward application . . . of settled principles of personal jurisdiction," 137 S. Ct. at 1783, there is no reason to believe it surreptitiously overruled the prevailing law in several circuits. *See Lyngaas v. Ag*, 992 F.3d 412, 434 (6th Cir. 2021) (declining to extend *Bristol-Myers* to federal class action).

Nor is the Court persuaded by Defendants' other cited decisions, some of which the court in *Elite Erectors* already considered and rejected. *See id.* at 1036 (discussing *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000)). To the extent these cases inject the requirement of state-specific "contacts" as part of Fifth Amendment due process analysis, *Elite Erectors* holds otherwise. "Limitations on sovereignty, and not the convenience of defendants, lie at the core" of the Supreme Court's personal jurisdiction analysis. *Id.* at 1037 (citing *Burger King*, 471 U.S. 462, and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). As the Seventh Circuit explained, a Fifth Amendment due process violation could result if a defendant were forced to litigate in a far-flung location—say, "the westernmost settlement in the Aleutian Islands"—because the "transportation costs easily could exceed the stakes and make the offer of adjudication a mirage." *Id.* at 1036. "But this principle is unrelated to any requirement that a defendant have 'contacts' with a particular federal district and does not block litigation in easy-to-reach forums." *Id.*

7

Defendants' interests are instead protected by venue and transfer statutes and the ability of prevailing parties to recover attorney's fees. *Id.* at 1036-37.

Defendants also make much of the factual distinctions between this case and *Elite Erectors*, which arose through a jurisdictional challenge to a default judgment entered by the Eastern District of Virginia, but fail to explain how any of those differences are relevant. Nowhere in *Elite Erectors* did the court suggest that the defendants' litigation conduct or posture had anything to do with why jurisdiction was proper. In any event, Defendants here have just as many "contacts" with Illinois as the defendants in *Elite Erectors* had with Virginia: Zero.

At bottom, the Supreme Court's decision in *Bristol-Myers* does not change the outcome in this case. *Bristol-Myers* requires a "connection between the forum and the specific claims at issue." 137 S. Ct. at 1782. *Elite Erectors* instructs that in ERISA actions such as this one, the relevant forum is the United States. *Id.* at 1035. The events giving rise to the claims in this case took place in the United States. Accordingly, personal jurisdiction is proper in this district under 29 U.S.C. §§ 1132(e)(2) and 1451(d).

II.     Motion to Transfer Venue to the Northern District of Indiana

Barring dismissal for lack of personal jurisdiction, Defendants ask this Court to transfer the case to the Northern District of Indiana, where they are incorporated and operate, pursuant to 28 U.S.C. § 1404(a).[3]

---

[3] Section 1404(a) provides that "For the convenience of the parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

8

A district court considering a transfer motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 (2013). Section 1404(a) "permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (cleaned up). The party seeking transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" than the transferor. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986).

  a. <u>Private interest factors</u>

Relevant private interest factors include the plaintiff's choice of forum, the convenience of the parties and witnesses, and the relative ease of access to evidence. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

"[T]he plaintiff's choice of forum is generally entitled to substantial weight, especially when it is plaintiff's home forum." *Id.* at 960. This is particularly true in ERISA cases, where Congress sought to "protect the financial integrity of employee benefit plans and the well being of participants and beneficiaries" through a liberal venue provision. *Trs. of Hotel Emps. & Rest. Emps. Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1182-83 (N.D. Ill. 1990). This factor therefore weighs heavily against transfer.

Defendants have not suggested that litigating this case in Illinois would be overly burdensome, though they would undoubtedly prefer to move it to their home

turf. They rather argue that litigating this case in Indiana will be more convenient for the parties "since all material events related to the dispute and all witnesses and documents are located in Indiana." R. 17, at 13. Since either party would presumably incur modestly increased expenses litigating outside its preferred forum, transfer here would seem to do little more than "shift inconvenience from one party to another." *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1044. This factor is therefore largely neutral.

Defendants emphasize that most of the witnesses are in Indiana, including Plaintiff Whobrey himself. But they have not identified any specific non-party witnesses who would be substantially inconvenienced by traveling to Chicago, which is only a few hours from Peru, Indiana by car. Most witnesses are likely to be party witnesses, who are presumed to appear voluntarily. *Id.* at 1045. As has become increasingly common during the COVID pandemic, other witnesses can be "deposed, examined, and cross-examined remotely and their videotaped testimony shown at trial." *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013). At best this factor slightly favors transfer.

In some cases, the situs of the material events will be an important factor. *See, e.g.*, *Amoco Oil*, 90 F. Supp. 2d at 961 (emphasizing relevance of environmental contamination occurring in the proposed transferee district as factor supporting transfer). Here, the "material events" are primarily legal and financial transactions with little connection to any physical space. Neither party addressed this factor in detail, and the Court finds it has little relevance in this case.

Finally, as to the relative access to sources of proof, much of the evidence here will be documents that can be easily transported or transmitted to either venue. The location of this type of evidence is rarely a persuasive reason to transfer a case. *Event News Network, Inc. v. Thill*, No. 05 C 2972, 2005 WL 2978711, at *5 (N.D. Ill. Nov. 2, 2005). Defendants argue that physical evidence relevant to Plaintiffs' successor liability claim against Shoshone Trucking is located in Indiana, but here again the court anticipates such evidence would be presented through documents and testimony—neither this Court nor the Northern District of Indiana can accommodate an 18-wheeled tractor trailer as an exhibit. This factor therefore favors transfer only slightly.

  b. <u>Public interest factors</u>

The interest of justice analysis "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Amoco Oil*, 90 F. Supp. 2d at 961 (quoting *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989)). Considerations include "the speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale." *Id.* at 962.

Although the Northern District of Illinois has a reputation as one of the busiest federal district courts in the country, in the 12-month period ending June 30, 2021, the median time to disposition in N.D. Ill. (14.2 months) was only slightly longer than

11

N.D. Ind. (12.5).[4] Docket congestion therefore only slightly favors transfer. Familiarity with the applicable law is neutral, as Plaintiffs' claims arise under federal law. *SEC v. Kasirer*, No. 04 C 4340, 2005 WL 645246, at *3 (N.D. Ill. Mar. 21, 2005). Finally, the relative interest of each forum in resolving the dispute weighs against transfer. Congress sought to protect employee benefit plans by allowing them substantial flexibility to litigate in their chosen locale, which "tips the scale radically in favor of" Plaintiffs. *Amivest*, 733 F. Supp. at 1184. Ordering transfer in this case would undermine that goal.

    c. Balancing the factors

The two most important factors here—the Plaintiffs' choice of forum and Congress's intent to protect employee benefit plans from undue costs of litigation—both weigh strongly against transfer. While a few of the other factors support transfer, they are of diminished importance and magnitude. *See id.* at 1183 ("Unless it is clearly outweighed by other factors, the [Plaintiffs'] choice of forum is entitled to deference."). Accordingly, the Court finds that Defendants have not shown that the Northern District of Indiana is "clearly more convenient" than this Court. *Coffey*, 796 F.2d at 221.

---

[4] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2021.pdf

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, or in the alternative to transfer venue [16] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 16, 2021